UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM BALDWIN,
  Plaintiff,

v.                                                    Case No. 8:09-cv-01331-VMC-EAG

NATIONAL CREDIT ADJUSTERS, LLC,
  Defendant.
_____/

## UNOPPOSED MOTION TO SET ASIDE ENTRY OF CLERK'S DEFAULT

Defendant, NATIONAL CREDIT ADJUSTERS, LLC, by and through undersigned counsel hereby moves this Court for an Order setting aside Clerk's Default pursuant to Federal Rules of Civil Procedure 55(c) and accepting Defendant's Answer and Affirmative Defenses and in support thereof states as follows:

1.    Plaintiff counsel has received a copy of this Motion and advised that they do not oppose it.

2.    On July 16, 2009, Plaintiff, WILLIAM BALDWIN, filed suit against NATIONAL CREDIT ADJUSTERS, LLC (Doc. No. 1).

3.    Thereafter, Plaintiff counsel and corporate representative for NATIONAL CREDIT ADJUSTERS, LLC entered into stipulations granting extension for time to serve a response pending attempts at resolving this matter.

4. Pursuant to communications between the parties, counsel for Plaintiff agreed to provide to Mr. Hyter, corporate representative for the Defendant an extension to obtain counsel and serve a response up to November 9, 2009. (Attached hereto and incorporated herein as Exhibit "A" are e-mail exchanges between the parties.)

5. Thereafter, Mr. Hyter, upon not receiving a response from plaintiff's counsel regarding requests for an additional extension of time to continue attempts at resolving this matter, forwarded a copy of the Complaint to his insurance carrier on November 9, 2009. The Defendant's insurance company thereafter forwarded this matter to undersigned counsel for representation and defense.

6. Defendant asserts that it took less than five days to obtain counsel to represent it in this matter following a request by NATIONAL CREDIT ADJUSTERS, LLC to its insurance carrier.

7. On November 13, 2009, undersigned counsel upon receipt of this file immediately obtained a copy of the Docket and discovered that a Clerk's Default was entered on November 12, 2009 (Doc. No. 11) pursuant to Plaintiff's Motion for Entry of Clerk's Default (Doc. No. 10) filed on November 11, 2009.

8. As a result, NATIONAL CREDIT ADJUSTERS, LLC submits that the Clerk's Default was neither culpable nor willful and that the setting aside of the entry of Clerk's Default would not prejudice Plaintiff and that the Defendant herein has a meritorious defense. (Attached hereto and incorporated herein as Exhibit "B", is NATIONAL CREDIT ADJUSTERS, LLC's proposed Answer and Affirmative Defenses to Plaintiff's Complaint.)

WHEREFORE, Defendant NATIONAL CREDIT ADJUSTERS, LLC seeks an order of this Court setting aside Clerk's Default (Docket No. 11) and any further relief that this Court deems just and proper.

## MEMORANDUM OF LAW

Federal Rules of Civil Procedure 55(c) provides the standard for setting aside an entry of default. Rule 55(c) states that: "[f]or good cause shown, the Court may set aside an entry of default." The Eleventh Circuit has stated explicitly that the standard for setting aside a default is different and less burdensome than the standard for setting aside a default judgment. See, *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524 (527-528 11th Cir. 1990). "Good cause" is a liberal standard, though not devoid of substance. See, *Compania Interamericana Export-Import SA v. Compania Dominicana De Aviacion*, 88 F.3rd 948, 951 (11th Cir. 1996). Guidelines the Courts use to evaluate Motions to Set Aside Default or to determine whether the default is culpable or willful are: whether setting it aside would prejudice the adversary and whether the defaulting party presents a meritorious defense. See *Id.* See also, *Woodberry v. Sears Roebuck & Co.*, 152 F.R.D. 229, 236 (M.D. Fla. 1993).

### I. Default is a drastic remedy reserved for extreme situations not present in this matter.

"The entry of judgment by default is a drastic remedy and should be resorted to only in extreme situations." *Hutton & Co. v. J. Moffitt*, 460 F.2d 284, 285 (5th Cir. 1972). A default judgment is a "severe sanction" that is "appropriate only as a last resort." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993). As a

3

general rule, default judgments are ordinarily disfavored because cases should be decided upon their merits whenever possible. *Creative Title Marketing, Inc. v. SICIS International S.r.L.*, 922 F.Supp. 1534, 1536 (S.D. Fla. 1996).

Upon information and belief, this Court issued an Order to Show Cause as to why the case should not be dismissed for lack of prosecution (Doc. No. 7). This Order prompted Plaintiff to file a Motion/Application for Entry of Default by Clerk (Doc. No. 11). Upon receiving this matter for defense, undersigned counsel served a Notice of Appearance (Doc. No. 12) and mistakenly filed a Joint Motion to Set Aside Default (Doc. No. 13) and thereafter, this Unopposed Motion to Set Aside Clerk's Default.

For a default judgment to stand, the Defendant "must be considered a totally unresponsive party and its default plainly willful, reflected by its failure to respond to the Summons and Complaint, the Entry of Default, or the Motion for Default Judgment. *International Painters & Allied Trades Industry Pension Fund v. Auxier Drywall, LLC*, 531 F.Supp. 2nd 56, 57 (D.D.C. 2008) quoting *Jackson v. Bech*, 636 F.2d 831, 836 (D.C. Cir. 1980). Several factors may inform a Court's decision on whether default judgment is appropriate: (1) the possibility of prejudice to plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money it has taken in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See, *Creative Title Marketing, Inc.* at 1536. A showing of bad faith could defeat a claim for neglect which is excusable, and a Court should consider all relevant circumstances including: prejudice

4

to the opposing party; length of the delay and it's potential impact on the judicial proceedings; the reason for the delay, including whether it is within the reasonable control of the party; and, whether the party acted in good faith. See, *Cheney v. Anchor Glass Container Corp.*, 71 F.3rd 848, 850 (11th Cir. 1996) (citing *Pioneer Investment Service Co. v. Brunswick Associates, Ltd. Partnership*, 507 U.S. 380, 381 (1993)).

The Defendant herein has been actively involved in communications with Plaintiff counsel regarding attempts at resolution of this matter and has not been totally unresponsive to Plaintiff. It was NATIONAL CREDIT ADJUSTERS, LLC's confusion, when he did not obtain a response from Plaintiff counsel to several e-mail communications up to November 9, 2009 (the previously agreed-to extension of time to serve response to Plaintiff's Complaint) neared.

II. **Default should be set aside pursuant to Fed. R. Civ. P. 55(c).**

Federal Rule of Civil Procedure 55(c) provides that the Court may set aside an entry of default for good cause. Good cause is a mutable standard which varies from situation to situation. It is also a liberal standard. See *Sobkowski v. Wyeth, Inc.*, 2004 WL 3569703, *2, (M.D. Fla. 2004). The determination of whether to set aside a default was entrusted to the discretion of the Court. *U.S. v. One 1980 49' DefenderYacht Lobster Vessel*, 566 F.Supp. 106, 108 (S.D. Fla. 1983). Any doubt as to whether default should be set aside is to be resolved in favor of setting aside default so that the case can be decided on its merits. *In Re: Marcon Enterprises, Inc.*, 75 B.R. 125, 127 (M.D. Fla. 1987). The defaulting party, NATIONAL CREDIT ADJUSTERS, LLC, has asserted meritorious defenses. (See attached Exhibit "B", Answer and Affirmative Defenses of

NATIONAL CREDIT ADJUSTERS, LLC.)  See, *Carmody v. MHM Solutions, Inc.*, 2008 WL 2844038, *2 (S.D. Fla. 2008).

### III. Defendant's Delay in Filing its Answer is Attributable to Excusable Neglect.

"Eleventh Circuit has noted that "excusable neglect" encompasses situations in which failure to comply with a filing deadline is due to negligence."  See, *Cheney v. Anchor Glass Container Corp.*, 71 F.3rd 484, 850 (11th Cir. 1980).  The *Cheney* court expounded on the meaning of "excusable neglect" as well as the 11th Circuit's rationale in using this standard to determine whether parties demonstrated good cause for failing to comply with the filing deadline:

> While we have been at some pain to define "excusable neglect" in different fact situations, the Supreme Court has now clarified the meaning of "excusable neglect" in **Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership**, 507 U.S. 380 (1993).  There the Court held that a Bankruptcy Court abused its discretion by refusing to permit the late filing of a Proof of Claim pursuant to Bankruptcy Rule 9006(b)(1).  In reaching its decision, the Court reviewed the meaning of excusable neglect in the context of analogous rules that allow for late filings.  It stated that "for purposes of Rule 60(b), excusable neglect is understood to encompass situations in which the failure to comply with the filing deadline is attributable negligence."  The Court concluded that whether party's neglect of a deadline may be excusable decision turning on "all relevant circumstances surrounding the party's omissions."

*Cheney,* 71 F.3rd at 849-50.

As discussed by United States Supreme Court in *Pioneer*, the circumstances include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for delay, including whether it was within the reasonable control of the movant and whether the movant acted in good faith."  Considering these factors, the Court found that the creditor had engaged in excusable

6

neglect, because "the lack of any prejudice to the debtor or to the interest of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh strongly in favor permitting the party claim." *Pioneer*, 507 U.S. at 397-98.

Of particular importance here is the issue of good faith. The *Pioneer* Court was concerned that "To exclude every instance of inadvertent or negligent omission would ignore the most natural meaning of the word "neglect" and would be at odds with the accepted meaning of that word in analogous context," leads to the possibility of parties "freely ignoring court-ordered deadlines in hopes of winning a permissive reprieve." *Id.* at 394-95. This concern led the Court to adopt the "good faith" standard.

> To be sure, were there . . . any indication at all of bad faith, we would not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be "excusable." In the absence of such a showing, however, we conclude that the usual form of notice employed in this case requires a finding that the neglect of respondent's counsel was, under all the circumstances, "excusable."

*Id.* at 398-99.

Given the dictates of the Supreme Court's decision in *Pioneer*, it becomes clear why the 11th Circuit receded from its prior, more stringent standards when determining whether to set aside a default in the *Cheney* decision, since "a clerical error or miscommunication can cause a party to inadvertently overlook a filing deadline." *Carmody*, 2008 WL 2844038. Indeed, where defendant "has not been totally non-responsive" and has "acted in a timely fashion and zealously litigated the case" this contact generally constitutes excusable neglect. *Creative Tile Marketing, Inc.* at 1537.

It is equally clear that the rationale of the *Pioneer* decision motivated the *Cheney* court to determine that a simple miscommunication constituted excusable neglect.

> The reason for the delay in filing was the failure in communication between the associate attorney and the lead counsel. The circumstances of the error were obviously within counsel's control, but their non-communication resulted inaction amounts only to "omission caused by carelessness." In other words, their failure to comply with the filing deadlines is attributable to negligence . . . that a non-filing was simply an innocent oversight by counsel. We find no bad faith that would warrant for Sheriff *Cheney*'s right to a full trial of his cause.

*Cheney*, 71 F.3rd at 830. For that reason, the Court set aside the default. *Id.*

Similarly, in *Walter v. Blue Cross and Blue Shield United of Wisconsin*, 181 F.3rd 1198, 1202 (11th Cir. 1999), the Eleventh Circuit characterized the secretary's failure to record a filing deadline as excusable neglect. "[T]he reason for the delay was the failure of a former secretary of [plaintiff's counsel] to record to applicable deadline – the type of "innocent oversight" involved in *Cheney*." *Id.* (Citing *Advanced Estimating Systems, Inc. v. Riney*, 130 F.3rd 1996, 1999 (11th Cir. 1997) holding that miscommunication or clerical error constitutes excusable neglect, although attorney's failure to understand plain language of a Rule does not).

The reason for NATIONAL CREDIT ADJUSTER LLC's delayed filing of its answer are the same type of the reasons amounting to excusable neglect under *Cheney* and *Walter*. While communications between plaintiff counsel and the defendant occurred over the course of several months, there was a certain absence of response from plaintiff's counsel to Mr. Hyter's e-mails. This led Mr. Hyter to forward this matter to his insurance company which thereafter forwarded it to undersigned counsel. During this

8

period of time this Court entered its Order to Show Cause (Doc. No. 7) which prompted plaintiff counsel to file his Motion for Clerk's Default (Doc. No. 11). These errors in communication between plaintiff counsel and the corporate representative for NATIONAL CREDIT ADJUSTERS, LLC resulted in Defendant's failure to file its Answer timely and was purely a matter of inadvertence, as a result of the failure of communication between the parties. Significantly, Plaintiff's Motion for Default Judgment (Doc. No. 10) does not suggest that the Defendant was somehow acting in bad faith in this regard and explicitly fails the communication between plaintiff counsel and NATIONAL CREDIT ADJUSTERS, LLC with respect to the extension granted to November 9, 2009 and the additional communications leading up to that time deadline by NATIONAL CREDIT ADJUSTERS, LLC which went unanswered by plaintiff's counsel. Clearly, therefore, the Defendant has not exhibited the type of "bad faith that would warrant forfeiture [the movant's] right to a full trial of his cause." *Cheney*, 71 F.3rd at 850.

In considering a Motion to Vacate a default, the Court has recognized circumstances in addition to *Cheney* and *Walter* and held a conduct similar to the circumstances here constitute excusable neglect and warrants the setting aside of default. See, ***Monticello Insurance Company v. Dynabuilt Mfg. Co.***, 2005 WL 2578715, (M.D. Fla. 2005) (setting aside a default where delay was due to attorneys providing familial assistance); ***Sobkowski***, 2004 WL 3569703 (setting aside default where sole reason for late response was because defense counsel miscalculated the date response was due); ***In Re: Olympia Holding Corp.***, 226 B.R. 2005, 2008 (M.D. Fla. 1998) (setting aside a

9

default where delay was the result of an oversight by counsel). Accordingly, the Clerk's Default here should be set aside due to excusable neglect.

**IV. Defendant took prompt corrective action after receiving notice that default was entered.**

One factor weighing in favor of setting aside a default is where the moving party has "responded immediately to correct counsel's error when it learned of it. *Olympia Holding Company*, 226 B.R. at 709. See also *Subkowski*, 2004 WL 3569703. Upon realizing a Clerk's Default had been entered, counsel for Defendant proceeded to correct this by filing this Motion and attached Answer on November 17, 2009, five (5) calendar days following entry of Clerk's default (Doc. No. 11). See *Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) ("Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense.") Defendant's prompt corrective action is evidence to establish good cause to set aside the default.

**V. Plaintiff would not be prejudiced if default is set aside.**

It is clear that Plaintiff has not been prejudice by the delay in filing the Defendant's answer, nor will it be prejudiced if the default is set aside. Desire for a quick resolution to the case is not a sufficient basis for establishing prejudice in the default analysis. See *Subkowski*, 2004 WL 3569703. "If that [quick resolution] was the benchmark for determining whether there is a prejudice in setting aside a default, every plaintiff, without exception, who was the beneficiary of a default would suffer prejudice if the default was set aside and the case proceeded on the merits." *Id.*

Rather, the prejudice to be considered is the effect on the plaintiff's ability to prosecute the case on the merits. *Id.* Only where a lapse in time or loss of evidence would materially prejudice a plaintiff's ability to prosecute the case may a default be appropriate. *Id.* As noted in ***Olympia Holding***, 226 B.R. at 708, "[t]he delay that has occurred has had no impact on the proceeding as a whole; had the Defendant timely filed its answer and defenses, this proceeding would be no further along to a determination on its merits than it will be if the court sets aside that judgment."

Here, the five-day delay in filing Defendant's Answer has clearly not affected Plaintiff's ability to prosecute this case. Contrary to plaintiff's Motion for Entry of Default and Declaration in Support Thereof (Doc. No. 11), Defendant's Answer, pursuant to the agreement of the parties, was not due until November 9, 2009. Further, attempts by the unrepresented Defendant to communicate with plaintiff's counsel regarding an additional extension of its time to serve a response to the Complaint or further communication regarding resolution of this matter went unanswered. Defendant suggests respectively that plaintiff's counsel was motivated to serve its Motion for Default (Doc. No. 11) in response to this Court's Order to Show Cause (Doc. No. 7).

The Eleventh Circuit's decision in ***Cheney*** is widely cited by the District Courts of Florida. The circumstances here are similar to those in ***Cheney*** where the Eleventh Circuit saw "nothing indicating [the plaintiff] was lulled or otherwise prejudiced by the untimely filing, rather, the settlement discussions and continuing discovery indicates that both parties expect to continue litigating regardless of [the event leading to the late filing]."

In the instant case, the Defendant had been involved in communication with plaintiff counsel requesting correspondence and providing documentation to plaintiff counsel as well as attempting resolution of the plaintiff's claim up to and including the first week of November 2009. Furthermore, numerous decisions suggest that there is no prejudice to the non-defaulted party where a response is filed within a month of the deadline. See *Lockwood*, 211 F.Appx. 873 (11th Cir. 2006) (plaintiff was not prejudiced by a week's delay in Defendant's filing); *Walter v. Blue Cross, Blue Shield United of Wisconsin*, 181 F.3rd 1198, 1202 Note 3 (11th Cir. 1999) (no prejudice that the response was submitted approximately one month late); *Montecello Insurance Company v. Dynabuilt Manufacturing Co.*, 2005 WL 2578715, Note 3 (M.D. Fla. 2005) (Plaintiff not prejudiced by less than one month delay in responding to its Motion to Dismiss); *Sobkowski*, 2004 WL 3569703 (no prejudice to plaintiff when answer was filed approximately ten days late).

Rather, cases upholding the entry of a Default almost invariably involved responses that were filed over a month late. See e.g. *Tico Fire & Security, LLC v. Alcocer*, 2007 Westlaw 524583, Note 1 (11th Cir. 2007) (failure to answer complaint for more than two months after service of process.); *Weingarten v. Campagnia*, 178 B.R. 283, 285 (M.D. Fla. 1995) (appellant failed to file answer until more than two months after the Bankruptcy Court's original deadline); *In Re: Hancock*, 160 B.R. 677, 678 (M.D. Fla. 1993) (answer provided almost three months after due date). Since Defendant filed this Motion and Answer on November 17, 2009, five days following entry of the

Default and almost immediately after Defendant was made aware of Entry of Default, it is clear that the Plaintiff has not been prejudiced by this minor delay.

**VI.     Defendants have asserted a meritorious defense.**

Finally, Defendant has presented a meritorious defense. As noted in *Sobkowski*, "The Court must consider that the likelihood if success is not the measure" when reviewing whether a defendant has a meritorious defense, quoting, *Weisel v. Pischel*, 197 F.R.D. 231, 239 (E.D. NY 2000). "[Defendant's] allegations are meritorious if they contain even a hint of suggestion which, if proven at trial, would constitute a complete defense." *Id.*

WHEREFORE, Defendant, NATIONAL CREDIT ADJUSTERS, LLC respectfully requests that this Court enter an Order setting aside the Clerk's Default and accept as filed its Answer and Affirmative Defenses and any other relief that this Court deems just and appropriate.

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following: Matthew Kiverts, Esq., Attorney for Plaintiff, mkiverts@Consumerlawcenter.com and Adam Hill, Esq., Attorney for Plaintiff, ahill@Consumerlawcenter. com.

CONROY, SIMBERG, GANON,
KREVANS, ABEL, LURVEY, MORROW,
& SCHEFER, P.A.
201 E. Kennedy Blvd., Suite 900
Tampa, FL 33602
Phone: 813-273-6464
Fax: 813-273-6465

By: /s/ Michael S. Sperounes
    Michael S. Sperounes, Esq
    Florida Bar No. 844918
    Msperounes@conroysimberg.com